# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**TRAVIS DELANEY WILLIAMS,**

Plaintiff,

v.                                          **Case No. 14-cv-1594-pp**

**REBECCA SWENSON,**
**DR. JANE DOE,**
**NURSE JANE DOE 1,**
**NURSE JANE DOE 2,**
**NURSE JULIE,**
**CORPORAL GARVELA,**
**CORPORAL HAYNES,**
**CORPORAL PARKER,**
**B. DITTMANN,**
**DAVID G. BETH,**
**GUARD ULEMAN, and**
**MIKUTIS,**

Defendants.

---

### ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS (DKT. NO. 2), DENYING AS MOOT PLAINTIFF'S MOTION TO STAY (DKT. NO. 10), DENYING AS MOOT PLAINTIFF'S MOTION TO PROCEED AND FOR EXTENSION OF TIME TO PAY INTIIAL PARTIAL FILING (DKT. NO. 11), WAIVING INITIAL PARTIAL FILING FEE, AND SCREENING PLAINTIFF'S COMPLAINT

---

The plaintiff, a state prisoner, filed a *pro se* complaint under 42 U.S.C.

§1983, alleging that the defendants violated his civil rights in preparation for

and during time he spent at the Kenosha County Jail. This order resolves the

plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2), his motion

to stay (Dkt. No. 10), and his motion to proceed and for extension of time to

1

pay initial partial filing fee (Dkt. No. 11), and it screens the plaintiff's complaint.

## I.     MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

The Prison Litigation Reform Act gives courts discretion to allow prisoners to proceed with their lawsuits without pre-paying the $350 filing fee, as long as they comply with certain requirements. 28 U.S.C. §1915. One of those requirements is that the prisoner pay an initial partial filing fee. A prisoner will not be prohibited from bringing a civil action, however, for the reason that he lacks the assets and means to pay an initial partial filing fee. 28 U.S.C. §1915(b)(4).

On January 6, 2015, the court assessed an initial partial filing fee of $.09, which it ordered the plaintiff to pay by January 27, 2015. Dkt. No. 9. On January 15, 2015, the plaintiff filed a motion asking the court to stay for one year the order directing the plaintiff to pay his initial partial filing fee. He asserted that as of the time of his letter, he was in the Kenosha County Jail segregation unit, that Dodge Correctional Institution would not forward the $.09 for the initial partial filing fee, and that he was being denied access to his legal papers, legal copies, and adequate medical care. Two months later, on March 18, 2015, the plaintiff filed a motion asking to proceed with this case and seeking an extension of time to pay his initial partial filing fee. Dkt. No. 11.

The court concludes that the plaintiff lacks the funds to pay the initial partial filing fee, 28 U.S.C. § 1915(b)(4), and will grant the plaintiff a waiver of the payment of the initial partial filing fee in this case. The court grants the

Case 2:14-cv-01594-PP   Filed 09/10/15   Page 2 of 22   Document 12

plaintiff's motion for leave to proceed *in forma pauperis*, Dkt. No. 2, and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order. The court will deny as moot the plaintiff's other motions regarding his initial partial filing fee.

## II.    SCREENING OF PLAINTIFF'S COMPLAINT

### A.    Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss part or all of a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous when "it lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the "factual contentions are clearly baseless."  Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass."  Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

3

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

4

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.  Facts Alleged in the Complaint

The plaintiff suffers from osteoarthritis and has problems with his knees and hips. Dkt. No. 1 at 4.

1.  Dodge Correctional Institution

On October 15, 2014, while at Dodge Correctional Institution (Dodge), the plaintiff wrote to B. Dittmann and asked her to send his medical needs instructions with the plaintiff when he was sent to the Kenosha County Jail (the Jail) on October 24, 2014, pursuant to a writ for a court appearance. Dkt. No. 1 at 3. The plaintiff wanted the Kenosha County Jail to know about his medications, his leg wraps, and his knee-high socks. The plaintiff told Dittmann "that the medical staff at Kenosha County Jail are medical morons" and that he would suffer if she did not send the instructions. Id. Nevertheless, the instructions were not sent. Id.

Case 2:14-cv-01594-PP   Filed 09/10/15   Page 5 of 22   Document 12

2.    Kenosha County Jail

The plaintiff's narrative regarding his interactions with various staff members at the Kenosha County Jail is somewhat confusing and was not presented on strictly chronological order. The court will endeavor to sort them out and group them by defendant or groups of defendants.

At the beginning of his statement of claim, the plaintiff describes an interaction with Nurse Jane Doe 1 (a black nurse) on October 27, 2014. Id. That nurse told the plaintiff to see another nurse who could help him, but the plaintiff did not need to see the nurse. He wanted information about why the Jail had never assessed the plaintiff in eighteen months. According to the plaintiff, the Jail relied on false and misleading information from staff at the Racine County Jail. The plaintiff told the black nurse that he did not want to see the nurse if he had to pay because the nurse was not an orthopedic specialist. The black nurse said the plaintiff would not be charged a $5 copay, but he was charged. He was also told that he could never get orthopedic care without verification of his medical condition. Id.

The narrative then jumps to November 27, 2014, but the plaintiff later relates incident that occurred before that date.

On November 19, 2014, while the plaintiff was in the shower, nurse practitioner Rebecca Swenson came to the plaintiff's cell with officers and demanded that he sign a medical release from responsibility that she had sent the day before. Id. at 5. The plaintiff does not describe this document, but it seems to be different from the authorizations to release medical records (from

6

other medical providers) that the plaintiff also discusses signing. The plaintiff told her that he didn't have these forms. Swenson began to become irate, telling the plaintiff that she was going to get more forms and that he would sign them. The plaintiff screamed at Swenson that he would not release the Jail from liability and swore at her. He threatened to use the release from responsibility forms as toilet paper and told Swenson and the guards to kiss his ass. Id.

Swenson came back to the plaintiff's cell later the same day and said she wanted to give the plaintiff his pain medication three times a day. What she really did was to decrease the plaintiff's pain medication. The plaintiff wrote a complaint to medical and finally got a nurse to call the doctor, who got the plaintiff his pain medications three times a day. Id. at 6.

There was also a dispute over whether the plaintiff had a fish allergy because Swenson told the plaintiff there was no mention of the plaintiff being allergic to fish in his medical records from Dodge. This was resolved when non-medical staff approved a no fish diet after the plaintiff wrote a grievance and numerous request slips. Id. at 6.

The plaintiff saw Swenson on November 27, 2014. Id. at 3. The plaintiff told Swenson his issues and the he was not getting Ibuprofen three times a day, which was prescribed for him. He also told her that his room was too big and that his legs get tired and he needs a wheelchair at times. Swenson told the plaintiff to ask security staff for a wheelchair and said they would give him one. However, security staff had denied the plaintiff's numerous requests for a

7

wheelchair because he did not have an order allowing him to use one. Id. at 3-4. The plaintiff also told Swenson on November 27 that he had been charged $63 for medication he never received, but he did not receive a response even after following her directions regarding sending in receipts. Id. at 6.

The plaintiff says that he signed medical authorizations (for the Jail to obtain his medical records) during this November 27, 2014 meeting, but that Swenson called the plaintiff back three weeks later to say that Dodge did not have his records. She asked the plaintiff when he had been at Dodge even though the plaintiff already had notice from the office that they had received records from Dodge twice. Id. at 4.

Swenson asked the plaintiff what doctors he had seen, and stated that prison doctors were not good enough, demanding to know what doctors he'd seen in Wisconsin. She said she was trying to verify the plaintiff's medical condition through his medical records. The plaintiff asked why she didn't just examine him herself or send him out to be seen by another medical professional. Id.

According to the plaintiff, Swenson lied to defendant Corporal Garvela during a grievance investigation on November 24, 2014. She told Garvela that the plaintiff refused to sign medical authorizations, but on that day the plaintiff had signed a fourth authorization for the release of medical records from another provider in Illinois. He was released from isolation the next day. Id. at 4-5.

The plaintiff also generally says that Swenson has called him numerous times to question him and harass him. He also believes she conspired with defendant Corporal Haynes (and another guard who was not named as a defendant) to put the plaintiff in isolation on December 2, 2014. According to the plaintiff, he was placed in isolation because he refused to sign a "release from medical responsibility." Id. at 5. Once again, the plaintiff does not elaborate on this document, but it seems to be something different from the medical authorizations to obtain medical records from other providers.

The plaintiff suggests Swenson's actions were in retaliation for having unverified medical issues. Swenson told the plaintiff he could not receive medical treatment without verification. The plaintiff was denied medical treatment for his 30 days in isolation, and Swenson decreased his pain medications.

Nurse Jane Doe 2 told the plaintiff numerous times that his medication had been ordered but that they had not received it yet. Id. at 6. This was despite the plaintiff forewarning her that the medication needed to be ordered. This nurse told the plaintiff on November 27 that the doctor was going to refill his prescriptions for only two weeks because he would not see the doctor. According to the plaintiff, the nurses and the doctor conspired to minimize the plaintiff's medications in retaliation for him not wanting to be interviewed by them. Id.

Doctor Jane Doe came to the plaintiff's cell twice, once asking the plaintiff if he had medical issues. Id. at 7. The plaintiff said yes and described

9

his issues. The doctor told the plaintiff the procedures for requesting medical care. The doctor came two weeks later and told the plaintiff that she could not treat him without medical verification. The plaintiff said that he did not want treatment, just for her to look at his medical records and give him a no fish tray. He also wanted her to correct the way the nurses had been issuing each dose of his medication. He also wanted a wheelchair. The doctor's response came weeks later, when she asked the plaintiff to submit to a blood test to verify his fish allergy. The doctor ultimately denied the plaintiff's non-fish diet, denied him a wheelchair, and changed his medication. Id. It is unclear when these conversations with Doctor Jane Doe took place.

Nurse Julie denied the plaintiff pain medication on December 7, 2014. Id. at 8. The plaintiff says she did this in retaliation for not signing a medical release from responsibility. Nurse Julie also said he was out of pain medication for his order because the doctor had only prescribed a one-week extension. She said that the plaintiff would have to see a doctor (and presumably pay a co-pay) to get more medication. The lack of medication caused the plaintiff extreme pain. Id.

On December 7, Guard Uleman and Nurse Julie tried to force the plaintiff to take a blood pressure test by intimidation and withholding his morning medication; they also tried to get the plaintiff to sign a release from medical responsibility. When the plaintiff refused, his afternoon medication was stopped too. Id.

10

Corporal Haynes conspired with jail guard Isaac and nurse practitioner Swenson to place the plaintiff in isolation; the complaint does not make clear when this occurred. Id. at 7.

The plaintiff also makes several claims regarding grievance procedures. According to the plaintiff, Corporal Parker refused to acknowledge the plaintiff's grievances and request slips from October 27, 2014, through December 23, 2014. Id. at 7. Corporal Garvela denied the plaintiff access to the grievance procedures and conducted an inaccurate investigation that led to the plaintiff's grievance being denied; she found that the plaintiff had not signed a medical authorization, but he had signed it that day. Id. And defendant L. Mitkutis, a sergeant, denied the plaintiff access to grievance procedures by condoning the actions of the nurse practitioner and doctor and by not having a procedure for investigating staff misconduct. Id. at 10.

Finally, the plaintiff makes numerous claims against Sheriff David Beth in both his individual and official capacities regarding Jail policies. The Jail policies the plaintiff complains about include: (1) grievance procedures; (2) breakfasts; (3) conditions of confinement; (4) provision of medical services; (4) blanket exchange; (5) cell illumination; (6) heat and ventilation; (7) clothing; (8) charges for medical services; (9) the ability to bring a Bible from another institution; (10) confidentiality of medical information; and (11) incompetent staff. Id. at 8-10.

C.    Legal Analysis of Alleged Facts

As an initial matter, the court will address the plaintiff's claims against defendant B. Dittmann. She is the only defendant employed by the Wisconsin Department of Corrections. The plaintiff fails to state a claim against her. There is no constitutional duty to forward an inmate's medical records to a new institution upon the inmate's request. Thus, the court will dismiss B. Dittman as a defendant.

The court will now turn to the plaintiff's time at the Kenosha County Jail. It appears that the plaintiff engaged in a power struggle with staff at the Jail. This primarily related to Nurse Practitioner Rebecca Swenson and involved whether the plaintiff's medical conditions were verifiable and whether the plaintiff would sign a release from medical responsibility. These claims boil down to complaints about the medical treatment the plaintiff received at the Jail.

1.    Medical Care Claims

It appears the plaintiff was a convicted prisoner who was returning to the Kenosha County Jail for further court proceedings. If so, the Eighth Amendment applies to his medical care claims. See Ortiz v. City of Chicago, 656 F.3d 523, 530 (7th Cir. 2011) (quoting Lopez v. City of Chicago, 464 F.3d 711, 719 (7th Cir. 2006)). If, by chance, the plaintiff was still a pretrial detainee who had not yet been convicted and sentenced, then the Fourteenth Amendment would apply. Id. The plaintiff cites the Fourth Amendment in his complaint, but the Fourth Amendment governs only claims by individuals who

12

have not had a judicial determination of probable cause. <u>Ortiz</u>, 656 F.3d at 530 (citing <u>Lopez</u>, 464 f.3d at 719). The court will consider the plaintiff's medical care claims under the Eighth and Fourteenth Amendments.

To state an Eighth Amendment claim based on deficient medical care, a plaintiff must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. <u>Arnett v. Webster</u>, 658 F.3d 742, 750 (7th Cir. 2011) (citing <u>Johnson v. Snyder</u>, 444 F.3d 579, 584 (7th Cir. 2006)).

A medical need is considered sufficiently serious if the inmate's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." <u>Roe v. Elyea</u>, 631 F.3d 843, 857 (7th Cir. 2011) (quoting <u>Greeno v. Daley</u>, 414 F.3d 645, 653 [7th Cir. 2005]).

The Supreme Court has held that to prove that a defendant acted with "deliberate indifference," a plaintiff must prove more than just negligence, but does not have to prove that the defendant acted with the purpose of harming the plaintiff or with knowledge that harm would result; it is the equivalent of acting recklessly. <u>Farmer v. Brennan</u>, 511 U.S. 825, 835-36 (1994).

At this stage, the court will consider the plaintiff's osteoarthritis and knee and hip problems a serious medical need. The question is whether each of the named defendants acted with deliberate indifference to that medical need.

Based on the factual allegations in the plaintiff's complaint, the court concludes that he may proceed on Eighth Amendment medical care claims

against defendants Rebecca Swenson, Dr. Jane Doe, Nurse Jane Doe 2, Nurse Julie, and Uleman.

The plaintiff's allegations are not sufficient to state a claim against Nurse Jane Doe 1, whose only transgression was mistakenly telling the plaintiff he would not have a $5 copay if he saw the nurse. The court will dismiss Nurse Jane Doe 1 as a defendant.

Section 1983 defendants are responsible for "for their own misdeeds but not for anyone else's." Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir.2009). However, "[o]ne can imagine a complaint examiner doing her appointed tasks with deliberate indifference to the risks imposed on prisoners. If, for example, a complaint examiner routinely sent each grievance to the shredder without reading it, that might be a ground of liability." Id. at 595.

Here, the plaintiff is essentially accusing defendant Parker of doing just what the court in Burks imagined—ignoring his grievance and complaint slips altogether. The plaintiff says that Corporal Parker refused to acknowledge the plaintiff's grievances and request slips from October 27, 2014 through December 23, 2014. Although the facts regarding this claim are sparse, the plaintiff has alleged enough to suggest that Corporal Parker did not properly address his grievances and thus was deliberately indifferent to the serious medical needs that were the subject of the grievances. The court will allow the plaintiff to proceed on a deliberate indifference claim against defendant Parker.

2.     Retaliation

The plaintiff suggests that a number of defendants took various actions in retaliation for the plaintiff refusing to sign a medical release from responsibility. However, "[t]o prevail on a First Amendment retaliation claim, [the plaintiff] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment Activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." Bridget v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009); Woodruff v. Mason, 542 F.3d 545, 551 (7th Cir. 2008); Massey v. Johnson, 457 F.3d 711, 716 (7th Cir. 2006). The plaintiff has not alleged that he was engaging in any activity protected by the First Amendment. A refusal to sign a medical release from responsibility form is not First Amendment activity. The court will not allow the plaintiff to proceed on any First Amendment claims.

3.     Due Process Claims

The plaintiff alleges that defendants Rebecca Swenson and Corporal Haynes (along with another guard who was not named as a defendant) conspired to place him in isolation. "[C]onspiracy is not an independent basis of liability." Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008) (citing Cefalu v. Vill. of Elk Grove, 211 F.3d 416, 423 (7th Cir. 2000)). Additionally, the plaintiff cannot proceed on a civil conspiracy claim under §1983 because he is not suing any private actors. See Logan v. Wilkins, 644 F.3d 577, 583 (7th Cir. 2011). "To establish § 1983 liability through a conspiracy theory, a plaintiff

15

must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant(s) in joint activity with the State or its agents." Williams v. Seniff, 342 F.3d 774, 785 (7th Cir. 2003).

It appears from the plaintiff's complaint that he spent no more than thirty days in isolation. This length of time does not generally give rise to a liberty interest that requires due process. See Hardaway v. Meyerhoff, 734 F.3d 740, 743 (7th Cir. 2013). "[A]n inmate's liberty interest in avoiding segregation is limited." Id. (citing Marion v. Columbia Corr. Inst., 559 F.3d 693, 697 (7th Cir. 2009). Whether a liberty interest is implicated depends on "whether the confinement imposed an 'atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Id. (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). In Sandin, the Supreme Court held that a prisoner's sentence of thirty days of segregated confinement "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 486. In Marion, the Seventh Circuit concluded that "six months of segregation is not such an extreme term and, standing along, would not trigger due process rights." 559 F.3d at 698 (internal quotation omitted).

In this case, where the plaintiff was in isolation for no more than thirty days and makes no specific allegations regarding the conditions in isolation,

16

the court will not allow him to proceed on a due process claim. The court will dismiss Haynes as a defendant.[1]

The court now turns to the plaintiff's claim that Corporal Garvela denied the plaintiff access to the grievance procedures, which led to the plaintiff's grievance being denied because Swenson lied to Garvela about whether the plaintiff had signed a medical authorization. The plaintiff had signed the medical authorization the day of the hearing, and he was released from isolation the next day. These facts are insufficient to state a claim against Garvela, and the court will dismiss Garvela as a defendant.

### 4. Equal Protection Claims

The plaintiff cites the Equal Protection Clause of the Fourteenth Amendment as part of his legal authority. "To establish a prima facie case of discrimination under the equal protection clause, [plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." Brown v. Budz, 398 F.3d 904, 916 (7th Cir. 2005). The plaintiff does not allege any facts in his complaint which support a claim that he was a member of a protected class, or that he was treated different from members of an unprotected class. The court will not allow the plaintiff to proceed on any Equal Protection claims.

---

[1] The court notes that the plaintiff does reference some conditions of confinement in his policy claims against Sheriff David Beth, but he does not make these allegations in reference to his claims against Swenson and Haynes, or suggest that those conditions applied only in isolation.

17

5.  <u>Eleventh Amendment</u>

The plaintiff also mentioned as a legal ground for his claims the Eleventh Amendment, which provides states with sovereign immunity. This amendment protects *states* from suit, not individuals. The Eleventh Amendment does not provide any private cause of action for the plaintiff, and the court will not allow him to proceed on an Eleventh Amendment claim.

6.  <u>Policy Claims</u>

Finally, the court will consider the plaintiff's policy claims.

The plaintiff makes a number of claims against Kenosha County Sheriff David Beth. Although the plaintiff purports to name Beth in his individual and official capacities, the plaintiff's complaint does not describe any direct personal involvement by defendant Beth in any of the incidents the plaintiff describes. Claims against the David Beth in his official capacity are treated as claims against Kenosha County itself. <u>Grieveson v. Anderson</u>, 538 F.3d 763, 771 (7th Cir. 2008) (citing <u>Pourghoraishi v. Flying J, Inc.</u>, 449 F.3d 751, 765 (7th Cir. 2006)).

A plaintiff may sue a government entity under §1983 ". . . when the government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." <u>Monell v. City of New York Dep't of Social Serv's.</u>, 436 U.S. 658, 694 (1978). There must be a "direct causal link" between the alleged unconstitutional deprivation and the municipal policy or custom at issue. <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989).

18

Further, a government entity is liable under §1983 "only where the [government entity] *itself* causes the constitutional violation at issue." Id. at 386, citing Monell, 436 U.S. 658 at 695-95. The doctrine of "respondeat superior"—holding an employer liable for the actions of the employees—"will not attach under § 1983." Id.

Because the plaintiff alleges that a number of the policies at the Jail violated his civil rights, the court will allow the plaintiff, at this stage, to proceed on his policy claims against David Beth in his official capacity.

The plaintiff also states that a sergeant, L. Mitkutis, denied the plaintiff access to grievance procedures by condoning the actions of the nurse practitioner and doctor and by not having a procedure for investigating staff misconduct.

The plaintiff's allegations regarding condoning the actions of the nurse practitioner and doctor are too vague to state a claim. The doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under 42 U.S.C. §1983. See Pacelli v. deVito, 972 F.2d 871, 877 (7th Cir. 1992) ("Section 1983 does not create collective or vicarious responsibility. Supervisors are not liable for the errors of their subordinates.") "The 'should have known' theory . . . is both legally deficient and inconsistent with the demands of effective administration." Id.

The court will, however, allow the plaintiff to proceed on an official capacity claim against Mitkutis for the Jail's failure to have a procedure for investigating staff misconduct.

19

7.    Jane Does

The court notes that the plaintiff has alleged claims against Dr. Jane Doe, Nurse Jane Doe 2, and Nurse Julie. Once the defendants have filed an answer to the complaint, the court will issue a scheduling order setting deadlines for the identification of the Doe defendants, as well as for the completion of discovery and filing dispositive motions. The plaintiff will need to use the discovery process to discover the identities of the Doe defendants. He should then ask the court to substitute those individuals for the parties currently identified as Dr. Jane Doe, Nurse Jane Doe 2, and Nurse Julie.

## III.    CONCLUSION

The court **GRANTS** plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2). The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $350.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The Secretary of the Wisconsin Department of Corrections or his designee shall clearly identify the payments by the case name and number assigned to this case.

The court **DENIES AS MOOT** the plaintiff's motion to stay (Dkt. No. 10) and **DENIES AS MOOT** plaintiff's motion to proceed and for extension of time to pay initial partial filing fee (Dkt. No. 11).

20

The court **DISMISSES** the following defendants: B. Dittmann, Nurse Jane Doe 1, Corporal Haynes, and Corporal Garvela.

The court **ALLOWS** the plaintiff to proceed on his Eighth Amendment deliberate indifference claims against defendants Rebecca Swenson, Doctor Jane Doe, Nurse Jane Doe 2, Nurse Julie, Uleman, and Parker.

The court also **ALLOWS** the plaintiff to proceed on <u>Monell</u> claims against defendants Sheriff David Beth and Sgt. Mikutis in their official capacities.

The court **ORDERS** that the United States Marshal shall serve a copy of the complaint and this order upon the following defendants pursuant to Federal Rule of Civil Procedure 4: Rebecca Swenson, David Beth, Sgt. Mikutis, Nurse Julie, Guard Uleman, and Corporal Parker. The court advises the plaintiff that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

The court **ORDERS** that the defendants who are served shall file a responsive pleading to the complaint.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court

Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should also retain a personal copy of each document filed with the court.

The court further advises plaintiff that if he does not timely file documents, the court may dismiss his case for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send a copy of this order to the warden of the institution where the inmate is confined.

Dated at Milwaukee this 10th day of September, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge