UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRAVIS DELANEY WILLIAMS,

        Plaintiff,

v.                                                             Case No. 14-cv-1594-pp

REBECCA SWENSON,
DR. JANE DOE,
NURSE JANE DOE 2,
NURSE JULIE,
CORPORAL PARKER,
DAVID G. BETH,
GUARD ULEMAN, and
KURT MIKUTIS,

        Defendants.

**ORDER DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT (DKT. NO. 14); DENYING PLAINTIFF'S MOTION TO ADD CLAIMS (DKT. NO. 29); DENYING PLAINTIFF'S MOTION FOR COURT RULING (DKT. NO. 30); DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' BRIEF (DKT. NO. 40); DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 41); DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO FILE OVERSIZED BRIEF, MOTION FOR EXTENSION OF TIME, AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 45); DENYING PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 47); DENYING PLAINTIFF'S MOTION FOR DISCOVERY (DKT. NO. 59); GRANTING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S REPLY BRIEF (DKT. NO. 72); GRANTING DEFENDANTS' MOTION TO DEPOSE INCARCERATED PERSON (DKT. NO. 74); DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 76); DENYING PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 78); DENYING PLAITNIFF'S MOTION TO COMPEL (DKT. NO. 81); DENYING PLAINTIFF'S MOTION TO STAY (DKT. NO. 82); GRANTING PLAINTIFF'S MOTION FOR ORDER (DKT. NO. 83); AND DENYING WITHOUT PREJUDICE MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH LEAVE TO RE-FILE (DKT. NO. 33)**

The plaintiff, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights in preparation for and during time he spent at the Kenosha County Jail (Jail). The court screened the plaintiff's complaint on September 10, 2015, and allowed him to proceed on claims regarding the medical care he received at the Jail. Dkt. No. 12.

I.  **Plaintiff's Motion to Amend (Dkt. No. 14)**

On September 21, 2015, the plaintiff filed a motion to amend the complaint, along with a one-page inmate/detainee medical request from the Jail. Dkt. No. 14. The plaintiff makes specific arguments regarding his claims against certain defendants, and argues that the court should not have dismissed Nurse Jane Doe 1 and Corporal Garvela. Id. at 1-3. The plaintiff argues that the court applied a standard to his complaint far above what should be expected of a *pro se* litigant, and he asks for an opportunity to amend his complaint. Id. at 3-4. He says this is the third complaint the court has misconstrued, or in which it has stated something in its error that he did not say in complaint to rule against him. Id. at 4.

The court construes this pleading as a motion to amend the complaint. The court will deny the motion, because plaintiff did not comply with Civil Local Rule 15(a), which requires that the plaintiff must attach to a motion to amend the complaint a proposed amended complaint.

The court also could have construed the plaintiff's pleading as a motion for reconsideration under Federal Rule of Civil Procedure 54, which allows the court to revise any order adjudicating fewer than all the claims at any time

2

before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. In order for the court to grant a Rule 54 motion, however, the plaintiff would have to have shown "manifest errors of law or fact" in the court's screening order or presented any newly discovered evidence. See Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir.1987) (citation omitted). He has not done so.

The court will deny this motion.

## II. Motion Response (Dkt. No. 29) and Motion to Strike (Dkt. No. 40)

The DOC defendants filed their answer on November 2, 2015. Dkt. No. 27. Two weeks later, the plaintiff filed a document entitled "Motion Response to Defendants." Dkt. No. 29. The second full paragraph of that motion states, "I ask the court pursuant to Fed. R. Civ. Pro 18 to add the claims of the action of Defendant Kurt Mikutis of an 8-28-15 first degree attempted murder 9420.01(1)(A) by toxic's, retaliation for continuing prior litigation, along with Defendant Corporal Darvela [sp]." Id. He then responds to each section of the defendants' answer and talks about the ways in which the court erred in its screening order. Toward the end of the response, he discusses in detail why he believes he ought to be able to obtain damages from defendant Beth. Id. at 9-18. Throughout the motion, he makes reference to several other defendants, and to a number of different incidents. He ends the motion by asking the court to "allow those new claims while dismissing the defendants affirmative defenses." Id. at 22. He also asks the court to set a date for the defendants to answer the new claims, and to set dates for discovery and trial. Id.

3

The defendants filed a brief in opposition to the plaintiff's "Motion Response to Defendants." Dkt. No. 31. They construed the motion response as a motion to join claims, and perceived that the plaintiff was trying to add into his complaint new claims against defendants Mikutis and Garvela regarding something that happened on August 28, 2015. Id. at 2-3. The defendants argued that the court should not allow the plaintiff to join these new claims, because he was trying to join different actions against different parties based on different facts, in violation of Fed. R. Civ. P. 18(a). Id. at 3. The defendants also argued that even if the plaintiff filed these claims in a separate lawsuit, they would not survive a motion to dismiss.

On December 31, 2015, the plaintiff filed a motion to strike the defendant's opposition brief. Dkt. No. 40. He argues that the claims he wants to bring would survive a motion to dismiss, and reiterated some of the facts he asserted in his motion response. Id.

It is difficult for the court to separate out, in the twenty-two pages of the motion response, what claims the plaintiff wants to add against what defendants for what events. He may want to add claims against Mikutis (and possibly Beth) in their individual capacities for an incident which took place during a separate stay at the Jail in August 2015, during which the plaintiff was taken to an extremely high security segregation cell block, placed in an unclean cell, laughed at when he asked to move, and told to quit filing lawsuits. The plaintiff flooded the cell and turned over the garbage can, and its

4

contents mixed with the water and ran under the door and went into the hallway and made the guards sick. They gagged and ran out of the hall, and the plaintiff was left there for another hour even after the other inmates were evacuated.

The defendants argue that if the plaintiff wants to add claims based on that incident, the court should deny his request, because those claims are unrelated to the claims in the plaintiff's initial complaint. Dkt. No. 31 at 3. They argue that such claims, even if they are made against some of the same defendants that the defendant named in the initial complaint, would not be properly joined under Federal Rule of Civil Procedure 18. Id. at 3-4. The defendants also suggest that amendment would be futile, because the plaintiff is trying to add *criminal* charges to this civil case, id.; they note (correctly) that only prosecutors (district attorneys) have the authority to file criminal charges; criminal statutes do not create private causes of action. Id. at 4.

To the extent that it understands what the plaintiff wishes to do, the court agrees that he is trying to join unrelated claims. Under Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). For example, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." Id. The court will deny the plaintiff's motion response to the extent that it asks to add new claims relating to the incident in August 2015, Dkt. No. 29, and denies the plaintiff's motion to strike the defendants' opposition brief, Dkt. No. 40.

5

The court also notes that the civil procedure rules do not provide for a plaintiff to file a "response" to the defendants' answer. Once all the defendants in a case have answered the complaint, the court issues a scheduling order, which sets out deadlines for conducting discovery and for filing motions (such as summary judgment motions). If the defendants file a motion for summary judgment, the plaintiff will have an opportunity to dispute their version of events in his response. If the case survives summary judgment and goes to trial, the plaintiff will have the opportunity to present his case at trial. Until all of the defendants have answered and the court has issued a scheduling order, however, it is too soon for the court to make any decisions about who did what to whom.

### III. Motion for Court Ruling (Dkt. No. 30)

On December 7, 2015, the plaintiff filed a motion asking for a court ruling on his response to the DOC defendants' answer. Dkt. No. 30. The court is, as it discussed above, denying the "motion response," despite the fact that the rules do not allow a plaintiff to file a "response" to a defendant's answer. Accordingly, the motion for an order is moot.

### IV. Motion to Appoint Counsel (Dkt. No. 41)

On December 31, 2015, the plaintiff filed a motion asking the court to appoint counsel, along with a supporting declaration and brief. Dkt. No. 41. The plaintiff argues that he is unable to afford counsel, that the issues in this case are complex, and that he has sought counsel for well over a year. Id. The plaintiff also tells the court that he is a handicapped person who is being

6

denied the use of a wheelchair in retaliation for complaining about his health. Id. He says that the wheelchair denial means he has no access to the law library or to other inmates who can assist him. Id. He also states that he broke his hand in August 2015, that he is in constant pain due to no medical care for this, and that he cannot effectively write. Id.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on their own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). The plaintiff refers the court to letters from attorneys, which he filed in his other cases, as proof of his attempts to secure counsel on his own. Although requests for representation should be case-specific, the court finds that the plaintiff has met the threshold requirement under Pruitt.

As a result, the court must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

In this motion to appoint counsel and the supporting documents, the plaintiff makes a number of serious allegations regarding his current

7

conditions at Columbia Correctional Institution. But the allegations in his complaint—the allegations in the lawsuit he has brought—are about the plaintiff's interactions with staff at the Kenosha County Jail. If he has separate retaliation or access to the courts claims against staff members at Columbia, the plaintiff must bring those allegations in a new, different complaint.

This court must limit its inquiry to whether the plaintiff is competent to litigate this particular case, which involves medical claims against the individual defendants and Monell claims against defendants Sheriff David Beth and Sgt. Mikutis in their official capacities. The court finds, at this stage of the case, that the plaintiff has demonstrated that he is able to litigate this case on his own. The plaintiff has filed numerous handwritten documents in this case. He includes many facts and legal citations in each document he files. The court can read his handwriting. The only difficulty the court encounters in understanding the plaintiff's pleadings is the fact that he includes so much information, and so many allegations about so many different people, institutions and events, that the court finds it hard to separate the information. The plaintiff writes lucidly, and even filed a complete response to the defendants' motion for summary judgment, including a brief, a response to the defendants' proposed findings of fact, a sworn declaration, and exhibits.

Almost every prisoner who files a complaint asks the court to appoint counsel. The majority of prisoners don't have any money, cannot afford to hire lawyers, and do not have legal training themselves. Many have physical difficulties, many have a hard time accessing the law library. In an ideal world,

the court either would have money available to hire counsel for prisoner plaintiffs, or would have enough volunteer lawyers to appoint counsel to represent every prisoner who asks for one. But the court does not have either of those resources.

At this point, it appears to the court that the plaintiff is able to represent himself. The court will deny the motion to appoint counsel at this time, without prejudice to the plaintiff renewing the motion if the case reaches a point where it is too complex for him to handle.

**V.     Motions Regarding Summary Judgment (Dkt. No. 45)**

On December 28, 2015, medical defendants Nurse Julia and Rebecca Swenson filed a motion for summary judgment. Dkt. No. 33. On January 15, 2016, the plaintiff filed one document, that included a motion for leave to file oversized brief and a motion for an extension of time to reply to the defendants' motion for summary judgment. Dkt. No. 45. In the alternative, the plaintiff asked for injunctive relief directing staff at his current prison to give him law library time and access to a wheelchair for law library purposes. Id.

On February 18, 2016, the plaintiff filed a complete response to the medical defendants' motion for summary judgment. Dkt. No. 54. He included a brief, a declaration in opposition to the defendants' proposed findings of fact, and two other sworn declarations. The defendants filed their reply brief on February 24, 2016, Dkt. No. 65, and the motion for summary judgment is now fully briefed. Further, because (as discussed below) the plaintiff now has asked the court to substitute the real names of the three Doe defendants, the court is

9

going to deny the medical defendants' motion for summary judgment without prejudice, and allow them to file a new summary judgment motion after the newly-identified defendants have answered the complaint. As a result, the court will deny the plaintiff's motions regarding his response as moot.

The plaintiff also supplemented his response after the defendants had filed their reply. Dkt. Nos. 67-70. The court will strike those materials, as discussed below in the court's ruling on the medical defendants' motion to strike.

**VI.     Motion to Compel (Dkt. No. 47)**

On January 15, 2015, the plaintiff filed a motion to compel discovery documents. Dkt. No. 47.

There is a process that parties must use to collect discovery from each other. The process is outlined in Federal Rule of

Civil Procedure 26. Rule 33 of the Federal Rules of Civil Procedure allows a party to serve interrogatories (up to twenty-five) on the other side; Rule 33(b)(2) requires the other side to respond to the interrogatories within thirty (30) days. Rule 34 allows a party to ask the other side to produce documents; Rule 34(b)(2)(A) requires that the opposing party respond to such requests within thirty (30) days. Rule 36 allows a party to serve on the other side requests for admission; Rule 36(a)(3) says that the matter is "admitted unless, within 30 days after being served," the opposing party serves a written answer or objection.

10

These rules and deadlines are designed to allow the parties to exchange discovery without having to come to the court for help. Rule 37 allows the parties to come to seek the court's help only after they have followed the procedures laid out in Rules 33-36, and only after a party has failed to, or refused to, timely respond to legitimate discovery demands.

The plaintiff's January 15, 2016 motion to compel was premature. The plaintiff filed his request for production of documents on December 28, 2015. As provided in Rule 33, the defendants had thirty (30) days to respond. At the time the plaintiff filed his motion to compel on January 15, the defendants still had almost two weeks left before the response deadline.

By the time the defendants filed their response to the plaintiff's motion to compel, they already had timely responded to the plaintiff's requests, and had provided him with over 315 pages of documents. Dkt. No. 51 at 1. Thus, the plaintiff's motion became moot when the defendants provided him with this discovery.

Beyond this, this court's local rules, and the federal rules, require that before a party files a motion to compel, that party first must attempt to meet and confer with the other side, to try to work out any discovery disagreements before asking the court to intervene. Federal Rule of Civil Procedure 37(a); Civil Local Rule 37 (E.D. Wis.). This court's local rules require the plaintiff to file a certification, attesting to the fact that he attempted to meet and confer before filing the motion. While prisoners cannot call opposing counsel with ease, or go to an in-person meeting, inmates *can* "meet and confer" with opposing counsel

11

by writing letters. In this case, the plaintiff's motion did not include the certification regarding an attempt to meet and confer, and so the motion did not comply with the federal and local rules.

For all of these reasons, the court will deny the plaintiff's motion to compel.

**VII. Motion for Discovery (Dkt. No. 59)**

On February 19, 2016, the plaintiff filed a document entitled "Motion for Discovery under F. R. C. P. 26." Dkt. No. 59. While the plaintiff called this a motion (a motion is what someone files when they're asking the *court* to do something), the document is directed at the *defendants*, and asks them to produce a number of documents, primarily sections from the Kenosha Pretrial Facility Standard Operating Procedure Manual and the Kenosha County Sheriff's Department Policy & Procedures Manual. Id.

Because the plaintiff is asking the *defendants* for documents, the court construes this pleading as the plaintiff's initial request for production of documents. The plaintiff should serve discovery demands—requests for production of documents, interrogatories, requests for admission—on the *defendants directly*, by mail. Parties exchange discovery between themselves, and only involve the court when there is a dispute that they are unable to resolve after a good faith attempt to meet and confer. The court will deny this motion, but will assume that if they have not already done so, the defendants will respond as they would to any request for production of documents under Rule 34.

12

## VIII. DEFENDANTS' MOTION TO STRIKE REPLY BRIEF (DKT. NO. 72)

As noted above, after the medical defendants filed their reply to the plaintiff's brief opposing summary judgment, the plaintiff filed several additional documents. He filed a response to the defendants' proposed findings of fact (Dkt. No. 67), a response to the reply brief (Dkt. No. 69), and two declarations (Dkt. Nos. 68, 70). The medical defendants have asked the court to strike those documents because the Federal Rules of Civil Procedure do not allow for responses to replies. Dkt. No. 72.

The defendants are correct that what the plaintiff filed on March 24, 2016 are sur-reply materials. The Federal Rules of Civil Procedure do not authorize parties to file sur-replies; if a party wishes to file sur-reply materials, the party must seek authorization from the court to do so. The court grants such authorization rarely; the rules are designed to give the moving party the "last word." The court will grant the defendants' motion to strike Dkt. Nos. 67-70. The court advises the plaintiff that, when the medical defendants re-file their motion for summary judgment (as the court will discuss below), he will have one opportunity to respond to that motion; he should put everything that he believes to be important in his opposition brief.

## IX. DEFENDANTS' MOTION TO DEPOSE INCARCERATED PERSON (DKT. NO. 74)

The DOC defendants have asked for leave to depose the plaintiff at Columbia Correctional Institution (or at any other institution to which he might be moved in the future). Dkt. No. 74. The defendants have a right to conduct such a deposition; the court will grant the motion.

13

## X. MOTION TO APPOINT COUNSEL (DKT. NO. 76)

The plaintiff filed his second motion to appoint counsel on April 8, 2016. Dkt. No. 76. For the reasons discussed in section IV above, the court will deny this second motion, without prejudice to the plaintiff's renewing the motion at a later stage in the case.

## XI. MOTION TO COMPEL (DKT. NO. 78)

In his April 25, 2016 motion to compel (his second one in this case), the plaintiff indicates that he mailed a "second set of duplicate discovery requests," and that around April 4, 2016, the defendants denied certain facts. Dkt. No. 78 at 1. The plaintiff did not attach the actual copy of the defendants' responses to the his requests, but he makes arguments as to why each of the items he requested was relevant. Id. at 1-3.

The court notes that at the time the plaintiff filed this motion to compel, he had sued three "Doe" defendants—Dr. Jane Doe, Nurse Jane Doe 2, and Nurse Julie. Dkt. No. 1. In the April 25, 2016 motion to compel, the plaintiff mentions for the first time Nurse Megan Keefer, and states that Nurse Keefer is Nurse Jane Doe #2. Id. at 3. If the plaintiff asked, in his discovery demands, that the defendants provide information relating to someone named Megan Keefer, it is hard to see how the defendants would have known that Megan Keefer had any relevance to the plaintiff's case when, as of the time he served his discovery demands, he hadn't named Megan Keefer as a defendant.

Further, it appears that the defendants did respond to the plaintiff's discovery demands. He disagrees with their responses. The Federal Rules of

14

Civil Procedure provide a process for parties to use when they believe that the other side has failed, or has refused, to give them documents to which they are entitled. Under Rule 37 (and this court's local version of that rule), the party first must meet and confer with the other side to try to work out any disagreements. Then, if the party still believes that the other side is refusing to provide discovery to which he is entitled, he may file a motion to compel, along with a certificate demonstrating that the parties met and conferred, but that that they were unable to work out their differences.

As with his first motion to compel, the defendant did not file with this one a certificate demonstrating that the parties met and conferred prior to his filing the motion. The court will deny this motion for the same reason it denied the January motion to compel.

## XII. MOTION TO COMPEL (DKT. NO. 81)

In this May 10, 2016 motion to compel, the plaintiff asks the court to compel Rebecca Swenson, Julie Bennett (referred to as "Nurse Julie" in the complaint) and Megan Keefer (referred to as "Nurse Jane Doe 2" in the complaint) to produce "VNCC records" regarding these individual's compliance with their contractual agreement with the Kenosha County Jail. Id. at 1. He also asks the court to compel the these individuals to produce Keefer's work schedule for various months. Id. at 2.

As the court discussed above, this motion does not comply with the federal and local rules, because the plaintiff did not attach a certification attesting to the fact that he had attempted to meet and confer with opposing

15

counsel prior to filing the motion. And as the court discussed regarding the April 25 motion to compel, because the complaint did not yet name Julie Bennett or Megan Keefer as defendants, it is not clear how the defendants would have known that information relating to these two individuals was relevant to this lawsuit.

The court will deny this motion to compel.

### XIII. MOTION TO STAY (DKT. NO. 82)

The plaintiff asks, pursuant to Fed. R. Civ. P. 62(b), that the court stay all proceedings in this case until it has ruled on all of his motions, and until Doctor Karen Butler and Megan Keefer have been served. Dkt. No. 82. He indicates that "the 2 Doe defendants mentioned of Dr. Karen Butler & Megan Keefer has to be served" before the court proceeds. Id.

This is the first time the plaintiff formally has notified the court that he has identified any of the Doe defendants. In the complaint, he sued "Dr. Jane Doe," "Nurse Jane Doe 2," and "Nurse Julie." The plaintiff now appears to have learned that "Dr. Jane Doe" is Dr. Karen Butler, and as discussed in previous sections, he appears to have learned that "Nurse Jane Doe 2" is Megan Keefer, and that "Nurse Julie" is Julie Bennett.

The court will direct the clerk of court to amend the docket to substitute the real names of these three defendants, and will direct that the marshals serve these three defendants.

The court will deny the plaintiff's request to stay all proceedings. If the court were to stay *all* proceedings, then the three newly-identified defendants

16

would not be served and could not answer. Instead, the court will deny without prejudice the medical defendants' motion for summary judgment (Dkt. No. 33). Once the three newly-identified defendants have answered, the court will issue a scheduling order (containing a brief period of time for discovery). At the expiration of the discovery period, the medical defendants may file a new summary judgment motion. The court notes that the plaintiff is free to delay filing any further documents until all of the defendants have answered and the court has issued a scheduling order.

### XIV. MOTION UNDER FEDERAL RULES CIVIL PROCEDURE 4 (DKT. NO. 83)

In this motion, the plaintiff formally identifies the three Doe defendants discussed above, and asks that they be served. Id. As the court indicated above, it will grant this motion.

### XV. CONCLUSION

The court **DENIES** the plaintiff's motion to amend the complaint. Dkt. No. 14.

The court **DENIES** the plaintiff's motion to add claims. Dkt. No. 29.

The court **DENIES** the plaintiff's motion for court ruling. Dkt. No. 30.

The court **DENIES** the plaintiff's motion to strike defendants' brief. Dkt. No. 40.

The court **DENIES WITHOUT PREJUDICE** plaintiff's motion to appoint counsel. Dkt. No. 41.

The court **DENIES AS MOOT** the plaintiff's motion for leave to file oversized brief, motion for extension of time, and motion for a restraining order. Dkt. No. 45.

The court **DENIES** plaintiff's motion to compel discovery documents. Dkt. No. 47.

The court **DENIES** the plaintiff's motion for discovery. Dkt. No. 59.

The court **GRANTS** the medical defendants' motion to strike the plaintiff's sur-reply materials. Dkt. No. 72.

The court **GRANTS** the DOC defendants' motion to depose an incarcerated person. Dkt. No. 74.

The court **DENIES** the plaintiff's motion to appoint counsel. Dkt. No. 76.

The court **DENIES** the plaintiff's motion to compel. Dkt. No. 78.

The court **DENIES** the plaintiff's motion to compel. Dkt. No. 81.

The court **DENIES** the plaintiff's motion to stay all proceedings. Dkt. No. 82.

The court **GRANTS** the plaintiff's motion for an order substituting the actual names of the John/Jane Doe defendants. Dkt. No. 83. The court **ORDERS** that the clerk of court substitute the following names:

> For defendant "Doctor Jane Doe"—Dr. Karen Butler
>
> For defendant "Nurse Jane Doe 2"—Megan Keefer
>
> For defendant "Nurse Julie"—Julie Bennett

The court **ORDERS** that the United States Marshall shall serve a copy of the complaint and this order on defendants Butler, Keefer and Bennett,

pursuant to Federal Rule of Civil Procedure 4. The court advises the plaintiff that Congress requires the U.S. Marshal Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marsha Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived, either by the court or by the U.S. Marshal Service.

The court also **ORDERS** that defendants Butler, Keefer and Bennett shall file a responsive pleading to the complaint.

The court **DENIES WITHOUT PREJUDICE** the medical defendants' December 28, 2015 motion for summary judgment. Dkt. No. 33. Once the newly-identified defendants have answered, the court will issue a scheduling order, and will give the medical defendants the opportunity to file a new summary judgment motion and brief.

Dated in Milwaukee, Wisconsin this 26th day of May, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge