UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRAVIS DELANEY WILLIAMS,

        Plaintiff,

v.                                            Case No. 14-C-1594

CORPORAL PARKER,
SHERIFF DAVID BETH,
OFFICER UELMEN, and
SERGEANT MIKUTIS, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Travis Delaney Williams, who is currently representing himself, filed this action under 42 U.S.C. § 1983 alleging that his civil rights were violated while he was incarcerated at the Kenosha County Detention Center (KCDC) (also referred to by the parties as the Kenosha County Jail). On September 10, 2015, U.S. District Court Judge Pamela Pepper (the judge assigned to the case at that time) allowed plaintiff to proceed on the following claims against defendants Corporal James Parker, Sheriff David Beth, Officer Mark Uelmen, and Sergeant Kurt Mikutis (the County Defendants)[1]:

(1) A claim against Uelmen based on plaintiff's allegations that he denied medications to plaintiff on December 7, 2014, after plaintiff refused to sign a release of responsibility form.

---

[1] Defendants Meghan Keefer, Julie Bennett, and Rebecca Swenson (the Medical Defendants), as well as defendant Karen Butler also filed motions for summary judgment. ECF Nos. 116, 124. The court addresses those motions in separate orders.

(2) A claim against Parker based on plaintiff's allegations that he refused to acknowledge or respond to plaintiff's complaints or grievances.

(3) A claim against Mikutis in his official capacity based on plaintiff's allegations that there was no policy or procedure for investigating officer misconduct.

(4) A claim against Beth in his official capacity based on plaintiff's allegations of unconstitutional policies or procedures regarding medical care, grievances, inmate clothing, mattresses, cleanliness of cells and showers, food, heat, ventilation, religious items, and other conditions of confinement. ECF No. 12 at 12-19.[2]

Currently before the court is plaintiff's motion for summary judgment, ECF No. 107, and the County Defendants' motion for summary judgment, ECF No. 143. For the following reasons, the court will grant the County Defendants' motion for summary judgment and deny plaintiff's motion.

## BACKGROUND

Plaintiff's complaint relates to incidents that allegedly occurred between October 2014, when plaintiff arrived at KCDC, and December 2014, when plaintiff filed his federal lawsuit.

**A. Plaintiff's Allegations against Defendant Uelmen**

On December 6, 2014, the KCDC doctor reduced plaintiff's prescription for Ibuprofen from three times per day to two times per day. ECF No. 127 ¶ 19. The next day, Uelmen requested that plaintiff sign a release from medical responsibility because plaintiff refused to have his blood pressure and pulse taken. *Id*. at ¶ 13. Plaintiff often refused to take his medications and to have his blood pressure taken. *Id*. at ¶ 14. Plaintiff refused to sign the form. *Id*. at ¶ 13.

---

[2] Plaintiff is limited to the claims that Judge Pepper allowed him to proceed on based on her review of the factual allegations in his complaint. Claims that plaintiff attempted to raise after Judge Pepper's screening order are not properly before the court, and the court will not consider them.

2

Uelmen asserts that he never intimidated or improperly pressured plaintiff to have his blood pressure tested or to sign the release of responsibility form, nor did he request that anyone change plaintiff's medications after he refused to sign the form. *Id*. at ¶¶ 15–16. Uelmen explains that, as an officer, he has no role in deciding which medications are given, how often they are given, or what dosage is given; those determinations are made by medical personnel. *Id*. at ¶ 17. Uelmen also states that he was not aware that plaintiff was not given his medications on December 7, 2014. *Id*. at ¶ 18.

**B. Plaintiff's Allegations against Defendant Parker**

Plaintiff alleges that Parker ignored the grievances he filed while at KCDC. According to defendants, plaintiff filed only two grievances, neither of which were relevant to plaintiff's allegations against the County Defendants. ECF No. 127 ¶ 9. Plaintiff disputes defendants' assertion; he explains that he filed many grievances during that time, including grievances that complained about the conduct at issue in this case, but nearly all of his grievances were ignored or unaddressed. ECF No. 194, 194-1.

Parker asserts that, regardless of how many grievances plaintiff filed or attempted to file, Parker never reviewed, refused to acknowledge, or refused to relay any request slips or complaints submitted by plaintiff during October to December 2014. ECF No. 127 ¶ 21. Parker explains that, if an inmate files a grievance, there is not any specific person or supervisor who is responsible for reviewing the grievance. *Id*. at ¶ 20. The individual responsible for responding to an inmate grievance depends on many factors, including the nature of the complaint, the shift during which the grievance was submitted, how much investigation is required, and the officers who were on duty at the time. *Id.* Parker asserts that, from October to December 2014, he did not receive or respond to any grievance or appeal from plaintiff, and plaintiff never directed any grievances to him. *Id.* at ¶ 22.

**C. Plaintiff's Allegations Regarding Policies at KCDC**

Plaintiff was allowed to proceed against Beth and Mikutis in their official capacities based on his allegations that KCDC lacked constitutionally sufficient policies or procedures regarding medical care; grievances, including the investigation of officer misconduct; the cleanliness of inmate clothing, mattresses, cells, and showers; food quality; heat and lighting; religious items; and other conditions of confinement.

The County Defendants set out in detail KCDC's policies and procedures relating to requests for medical care, *id.* at ¶¶ 26–31; the filing of grievances and appeals, *id.* at ¶¶ 32–36; food service, *id.* at ¶¶ 37–45; and the investigation of staff misconduct, *id.* at ¶¶ 46–50. They also set forth in detail KCDC's policies and procedures regarding various conditions of confinement, including: cleaning of inmate linens, uniforms, and mattresses, *id.* at ¶¶ 51–58; cleaning of cells, showers, and dayrooms, *id.* at ¶¶ 59–64; charges for medical care and medications, *id.* at ¶ 30; bugs and infestations, *id.* at ¶ 59–64; religious materials and practices, *id.* at ¶¶ 65–67; temperature control of cells and dayrooms, *id.* at ¶¶ 68–71; lighting in cells and dayrooms, *id.*; and confidentiality of records, *id.* at ¶¶ 72–73.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations

omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) applies to this case because plaintiff was incarcerated when he filed his complaint. According to the PLRA, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Various important policy goals give rise to the rule requiring administrative exhaustion, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). If a court determines that an inmate failed to complete any step in the exhaustion process prior to filing a lawsuit, the court must dismiss the plaintiff's claim. *Perez v. Wis. Dept. of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits.").

The County Defendants argue that plaintiff's claims against them must be dismissed because plaintiff failed to exhaust his administrative remedies. They assert that, prior to filing his federal

5

complaint, plaintiff filed only two grievances, neither of which raised the alleged misconduct at issue in plaintiff's claims against the County Defendants. Plaintiff argues that he filed many more grievances than the County Defendants are acknowledging; he attaches copies of them to his brief in response to the County Defendants' motion. He explains that, as alleged in his complaint, his grievances were ignored or discarded. Defendants argue that many of the grievances are not signed, so they would not have been accepted by KCDC personnel. In addition, many of the grievances have no acknowledgment of being received or reviewed by KCDC personnel.

Exhaustion is an affirmative defense, and the burden of proof is on the defendants. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.* (citations omitted).

The County Defendants have not satisfied their burden. Plaintiff has provided copies of many grievances he asserts he filed during the relevant time period, despite defendants originally arguing that he filed only two grievances. In response to plaintiff's evidence, defendants highlight that many of these grievances and requests are unsigned, which is required before KCDC personnel will accept them, and many others lack any indication that KCDC personnel received them because the box where an officer is to put his name and unit number along with the date and time are left blank.

These arguments are unpersuasive. The court notes that plaintiff attaches grievances that are unsigned and/or unacknowledged, yet they contain a handwritten response from KCDC personnel. *See* ECF No. 194-1 at 3, 8. Based on plaintiff's submissions, the court concludes that KCDC personnel did not strictly enforce the requirement that inmates sign grievances or requests before

they would be accepted, nor did KCDC personnel always formally acknowledge receipt of a grievance or request by filling in that section of the form. Further, defendants have provided no evidence that KCDC personnel ever informed plaintiff that his many grievances and requests were being rejected because he failed to sign them. Given that KCDC personnel accepted some unsigned grievances or requests, it was reasonable for plaintiff to conclude that that particular requirement was not strictly enforced. Defendants are not entitled to take advantage of the exhaustion requirement by arbitrarily enforcing certain requirements to their advantage.

In short, because the County Defendants have failed to carry their burden with respect to showing that plaintiff failed to exhaust the available administrative remedies, they are not entitled to summary judgment on that basis. The court will turn to the merits of plaintiff's claims.

**B. Personal Involvement**

Under §1983, only prison officials who are personally responsible for a constitutional violation can be liable. *Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009). In other words, an individual defendant must have caused or participated in a constitutional violation. *Hildebrandt v. Ill. Dept. of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). "Section 1983 does not establish a system of vicarious liability." *Burks*, 555 F.3d at 593. For this reason, Uelmen and Parker are entitled to summary judgment.

As to Uelmen, Plaintiff claims Uelmen denied him his medication, but the evidence demonstrates that Uelmen did no such thing. Uelmen explains that, as an officer, he had no control over what medication plaintiff received because those decisions were left to the medical staff. In fact, Uelmen states that he did not even know that plaintiff was refused medication after he interacted with him. Plaintiff provides no evidence to rebut Uelmen's assertions. As such, no jury could

7

reasonably conclude that Uelmen was personally involved in the conduct about which plaintiff complains. The court will dismiss plaintiff's claim against Uelmen.

Similarly, plaintiff complains that Parker ignored or discarded many of his grievances, but Parker explains that none of plaintiff's grievances were directed to him, and, even if they had been, no specific person or supervisor is responsible for reviewing a grievance. Parker states, under penalty of perjury, that, during the relevant time period, he "never reviewed, refused to acknowledge or refused to relay any requests slips or complaints submitted by [plaintiff]" nor did he "ever receive or respond to any grievance form or appeal filed by [plaintiff]." ECF No. 128 ¶ 4. Plaintiff fails to rebut Parker's statements; he has no personal knowledge about who received or reviewed his grievances and requests. Parker is entitled to summary judgment on this claim.

**C. Plaintiff's KCDC Policy Claims**

Plaintiff sets forth a number of conditions of confinement that he alleges were constitutionally problematic. He then makes the leap in logic that, because such conditions allegedly existed, it must mean that Kenosha County[3] lacked policies to address such conditions. Plaintiff's argument fails.

To succeed on his claim against Kenosha County, plaintiff must provide evidence from which a reasonable jury could conclude that Kenosha County's policies (or lack of policies) caused the harm about which plaintiff complains. *Glisson v. Ind. Dept. of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017). If the alleged harm was caused by an agent or employee of Kenosha County, rather than the policy itself, Kenosha County will not be held liable because § 1983 does not authorize vicarious

---

[3] Plaintiff was allowed to proceed against Beth and Mikutis in their official capacities. An official-capacity claim is another way of pleading an action against an entity of which the officer is an agent. *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). In other words, plaintiff's official-capacity claims against Beth and Mikutis are really claims against Kenosha County.

liability under the common-law doctrine of *respondeat superior*. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691–92 (1978).

Plaintiff fails to support his claim that Kenosha County lacked policies to address the many conditions about which he complained. The County Defendants describe in detail KCDC's extensive policies on the conditions at issue, including policies about requesting medical care, *id.* at ¶¶ 26–31; the filing of grievances and appeals, *id.* at ¶¶ 32–36; food service, *id.* at ¶¶ 37–45; and the investigation of staff misconduct, *id.* at ¶¶ 46–50. They also set forth in detail KCDC's policies and procedures on the cleaning of inmate linens, uniforms, and mattresses, *id.* at ¶¶ 51–58; the cleaning of cells, showers, and dayrooms, *id.* at ¶¶ 59–64; the charges for medical care and medications, *id.* at ¶ 30; dealing with bugs and infestations, *id.* at ¶¶ 59–64; addressing religious materials and practices, *id.* at ¶¶ 65–67; regulating the temperature of cells and dayrooms, *id.* at ¶¶ 68–71; regulating the lighting in cells and dayrooms, *id.*; and ensuring the confidentiality of records, *id.* at ¶¶ 72–73.

In light of these specific policies, the court assumes plaintiff's argument to be that existing policies were inadequate or could have been improved or that Kenosha County had a practice of allowing its employees to ignore the policies. Plaintiff fails to provide evidence from which a reasonable jury could reach either conclusion.

First, with regard to any argument that the existing policies are deficient, mere knowledge that additional procedures could be taken is not enough to prove an unconstitutional policy. *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998). Even if plaintiff had identified how each of the policies about which he complains was deficient (which he does not), he fails to set forth evidence demonstrating that Kenosha County knew about the alleged deficiencies or that it knew the

9

alleged deficiencies exposed inmates to a substantial risk of harm. *Id.* Without such evidence, plaintiff's claim cannot survive.

Plaintiff also fails to provide evidence to support a conclusion that Kenosha County knew that its employees were ignoring its policies and that it condoned that behavior. To succeed under such a theory, plaintiff would have had to present evidence of more than just isolated acts of misconduct. *Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003). Yet, the only evidence plaintiff presents is his own experiences. No reasonable jury could conclude from those isolated incidents that Kenosha County knew it had become the practice of its employees to ignore its policies. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 408–09 (1997). Because plaintiff provides no evidence that his alleged injury flowed from Kenosha County's inaction (rather than from the misconduct of an employee or agent of Kenosha County), plaintiff cannot succeed on his policy claim.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment as to the County Defendants (ECF No. 107) is **DENIED.** The County Defendants' motion for summary judgment (ECF No. 143) is **GRANTED**.

Dated this   1st   day of March, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
