UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TRAVIS DELANEY WILLIAMS,

       Plaintiff,

v.                                                    Case No. 14-C-1594

KAREN BUTLER, et al.,

       Defendants.

---

## DECISION AND ORDER

---

Plaintiff Travis Delaney Williams, who is currently representing himself, filed this action under 42 U.S.C. § 1983 alleging that his civil rights were violated while he was incarcerated at the Kenosha County Detention Center (KCDC) (also referred to by the parties as the Kenosha County Jail). On September 10, 2015, U.S. District Court Judge Pamela Pepper (the judge assigned to the case at that time) allowed plaintiff to proceed on his claim that Dr. Karen Butler was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[1] ECF No. 12. Currently before the court is plaintiff's motion for summary judgment, ECF No. 107, and Dr. Butler's motion for summary judgment, ECF No. 124.[2] For the following reasons, the court will deny plaintiff's motion for summary judgment against Dr. Butler and grant her motion for summary judgment.

---

[1] Plaintiff is limited to the claim that Judge Pepper allowed him to proceed on based on her review of the factual allegations in his complaint. Claims that plaintiff attempted to raise after Judge Pepper's screening order are not properly before the court, and the court will not consider them.

[2] Defendants Megan Keefer, Julie Benett, and Rebecca Swenson (the Medical Defendants), as well as defendants David Beth, Mark Ulemen, and Kurt Mikutis (the County Defendants) also filed motions for summary judgment. ECF Nos. 116, 143. The court addresses those motions in separate orders.

## BACKGROUND

Williams was incarcerated at KCDC for about five months, from October 2014, through early March 2015. ECF No. 132 at ¶ 1. Plaintiff asserts that, during his time at KCDC, he was in pain and had difficulty walking due to his osteoarthritis. ECF No. 1 at 4; ECF No. 162 at ¶¶ 48–50. Osteoarthritis is a common degenerative joint condition that most people suffer from as they age. ECF No. 132 at ¶¶ 56–57. According to Dr. Butler, osteoarthritis is not a serious medical condition. *Id.* at ¶ 57.

Dr. Butler asserts that, while plaintiff was at KCDC, doctors, nurse practitioners, nurses, and aides were available and attempted to assist plaintiff whenever he wanted and/or needed medical treatment. *Id.* at ¶¶ 6–7. However, plaintiff often refused to follow their advice or treatment plans. *Id.* at ¶ 8; ECF No. 162 at ¶ 4. For example, Dr. Butler explains that plaintiff refused to exercise, which she states is the primary treatment for osteoarthritis, and he often refused to take prescribed medications. ECF No. 132 at ¶¶ 58–59. In fact, plaintiff's medical records show that, during his short stay at KCDC, plaintiff refused treatment, care, and/or blood pressure checks on more than forty dates. *Id.* at ¶ 8.

Plaintiff asserts that he was put into isolation because he refused to sign a release from medical responsibility. ECF No. 1 at 5. Dr. Butler denies that he was put in isolation for that reason (she does not state what the actual reason was), and she denies that he was not provided medical care while there. ECF No. 132 at ¶¶ 9–10. Dr. Butler asserts that plaintiff was seen and offered treatment on a regular basis during that time, including during regular medical passes. *Id.* at ¶ 12. In fact, Dr. Butler states that, on November 4, 2014, she put in an order for the nurse practitioner to follow up with plaintiff on a weekly basis. *Id.* at ¶ 13.

During the time plaintiff was in isolation, medical records indicate that plaintiff refused to be seen and/or treated by medical personnel on five days. *Id.* at ¶ 15. On one such day, Dr. Butler asserts that she went to plaintiff's cell to perform a segregation check. *Id.* at ¶ 16. She explains that she called plaintiff's name, and although he looked right at her, he ignored her and refused to speak with her. *Id.* That same day, plaintiff filed a grievance, wherein he stated, "November 18, 2014, 7:10 am the doctor and nurse came to the door for what? I wouldn't know, but I made eye contact with them and they waived [sic] me over to the door, I ignored them, they kept knocking on the door despite clear body language I don't want to see them." *Id.* at ¶ 17.

Plaintiff also alleges that Dr. Butler refused to treat him because he lacked medical verification. ECF No. 1 at 7; ECF No. 162 at ¶ 8. Specifically, plaintiff alleges that he told Dr. Butler that he did not want to be treated; he just wanted her to look at his medical chart and instruct the staff to give him a no-fish tray, because he was allergic to fish, and a wheelchair. ECF No. 1 at 7; ECF No. 162 at ¶ 9. Dr. Butler asserts that she did not deny plaintiff a no-fish tray. ECF No. 132 at ¶ 23. Rather, despite plaintiff's refusal to submit to a blood test to determine the extent of his allergy, medical staff authorized a no-fish tray diet for him. *Id.* at ¶ 24; ECF No. 162 at ¶ 18.

With regard to the wheelchair, Dr. Butler explains that, when plaintiff entered KCDC, he was authorized to use a wheelchair for long distances as well as a cane for daily use. ECF No. 132 at ¶ 25. Dr. Butler explains that plaintiff requested that he be allowed to use the wheelchair whenever he wanted. *Id.* at ¶ 26. She advised plaintiff that he would need to be examined to determine whether a wheelchair was necessary. *Id.* Dr. Butler states that, on November 19, 2014, she placed plaintiff on a seventy-two hour activity log to evaluate plaintiff's physical abilities. *Id.* at ¶ 27. According to the log, plaintiff was seen mopping his cell, including standing, bending over to wring the mop, and

3

rinsing and wringing the mop without difficulty and without using a cane, with even movements at a normal pace. *Id.* Further, on November 27, 2014, plaintiff was evaluated, and it was noted that there was no record he had knee replacement surgery as he contended, nor was there a scar behind his knee, as he claimed. *Id.* at ¶ 29. When the examiner was unable to find the scar, plaintiff refused further examination. *Id.* at ¶ 51. Plaintiff was again examined on December 29, 2014. *Id.* at ¶ 52. Although he claimed to be in pain, the examiner determined his knee appeared normal. *Id.* Dr. Butler explains that neither her examination of plaintiff nor his records from Dodge Correctional supported his contention that he needed a wheelchair for daily use. *Id.* at ¶ 28.

Despite being observed several times moving about his cell without the use of his cane and with apparent ease, plaintiff was allowed to continue to use his cane until January 9, 2015 (more than two weeks after he filed his federal lawsuit). *Id.* at ¶ 30. On that day, plaintiff struck another inmate with his cane, causing a hand fracture, orbital fracture, and corneal abrasion to the other inmate. *Id.* As a consequence for attacking another inmate, KCDC administration took plaintiff's cane from him. *Id.* That same day, x-rays were taken of plaintiff's knees, abdomen, thoracic spine, and c spine/neck. *Id.* at ¶ 53. The conclusions were: grossly unremarkable thoracic spine series; grossly unremarkable left knee; grossly unremarkable right knee. *Id.* According to Dr. Butler, despite plaintiff's generalized complaints of pain, examinations and x-rays revealed no significant injuries or ailments. *Id.* at ¶ 54.

Plaintiff also complains that, again because he refused to be seen, Dr. Butler continued two of his prescriptions for only two weeks. *Id.* at ¶ 31. According to Dr. Butler, plaintiff had submitted a medical request form for minerin cream, which is used for dry skin, and lactulose, which is used for lactose intolerance. *Id.* at ¶ 32. Plaintiff was offered an alternative to lactulose, but he refused.

4

*Id.* The next day, plaintiff was told he would be given lactulose for two weeks, but, he would need to be seen in HSU for an assessment if he wanted another refill. *Id.* at ¶ 33.

Similarly, plaintiff alleges that, despite his complaints of knee, foot, and generalized pain, Dr. Butler extended his Ibuprofen prescription for only one week. *Id.* at ¶ 36; ECF No. 162 at ¶¶ 23–24. Dr. Butler explains that she required that plaintiff be examined before prescribing any further prescription extensions due to the risk of adverse health effects, including fatality, that can result from prolonged use. ECF No. 132 at ¶ 37. She further explains that continually prescribing medication to plaintiff without examining him to ensure his safety would have been dangerous and potentially fatal. *Id.* at ¶ 38.

A couple of days after extending his prescription by one week, Dr. Butler examined plaintiff. *Id.* at ¶ 39. She noted that plaintiff had a normal musculoskeletal exam and that he refused to do any of the exercises she had prescribed or submit to a blood test so she could better evaluate his health. *Id.* at ¶¶ 39–40. Even though she could not diagnose the cause or source of plaintiff's pain, she prescribed gabapentin 300 mg twice per day as a safer alternative to Ibuprofen. *Id.* at ¶ 41; ECF No. 162 at ¶ 32.

According to plaintiff's medical records, he refused six of his fourteen prescribed doses of medication in October 2014; he refused twenty-eight of his sixty prescribed doses of medication in November 2014; and he refused thirty-three of his sixty-two prescribed doses of medication in December 2014. *Id.* at ¶ 44. In December 2014, staff responded to plaintiff's complaints about health care with the following:

> In your complaints, you admit that at times you refuse to speak with medical staff and/or accept their treatment plans. Please understand you are no longer under the care of the prison doctor, you are now under the care of our doctor. Our medical

5

> team is doing what they can to ensure your health care needs are met. When health services staff attempts to talk or examine you, it's not harassment; it's an attempt to help you. I know you disagree with their plan of action, but that does not mean it is wrong . . . . I encourage you to work with our HSU team during your stay with us.

*Id.* at ¶ 45.

On January 8, 2015, plaintiff wrote on a medical request form that, as of January 6, 2015, he was refusing all prescribed medications. *Id.* at ¶ 46. According to Dr. Butler, plaintiff was informed that it was not recommended that he stop taking his medications and that HSU would continue to offer his medication to him. *Id.* at ¶ 47. According to plaintiff's medical records, between the months of January 2015 and March 2015, plaintiff refused some or all of his medications on more than forty days. *Id.* at ¶ 48.

After plaintiff was released from KCDC, he was incarcerated at Dodge Correctional Institution. *Id.* at ¶ 60; ECF No. 119-1 at 3. Medical records from Dodge reveal that plaintiff was seen by medical staff, an orthopedic specialist, and physical therapists. ECF No. 119-1 at 1–3. Records also reveal that plaintiff was determined not to need a wheelchair, but was advised to "get up and get moving" and to perform the prescribed exercises. *Id.*

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations

omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (citations omitted). This standard contains both an objective element—that the medical needs be sufficiently serious—and a subjective element—that the officials act with a sufficiently culpable state of mind. *Id.* To survive summary judgment plaintiff must set forth evidence from which a jury could reasonably conclude that he proved both elements of the standard.

With regard to the objective element—that plaintiff suffered from an objectively serious medical condition—Dr. Butler argues that osteoarthritis is a common condition that nearly all people will suffer from as they age. Regardless of how common it may be, Dr. Butler makes no assertions regarding the pain that those who suffer from the condition may experience. Given how subjective pain is, plaintiff's assertions that he suffered severe pain in his hips, knees, and feet would be sufficient for a jury to reasonably conclude that plaintiff has proven this element of the standard. As such, the court will focus its analysis on the subjective element.

With regard to the subjective element—that Dr. Butler was deliberately indifferent to his medical conditions, including his complaints of pain—plaintiff must present evidence from which a

7

reasonable jury could conclude that Dr. Butler's treatment decisions were so far afield of accepted professional standards that she essentially failed to exercise any medical judgment. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (citations omitted). Neither plaintiff's nor another medical professional's disagreement with her treatment decisions, without more, will be sufficient to make out a constitutional claim. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996).

The primary focus of Plaintiff's argument is that Dr. Butler did not defer to the treatment decisions of his previous doctor or to his own requests for what he believed was required to address his conditions. ECF No. 162 at ¶¶ 1, 2, 4, 21, 23, 24, 41, 42. Plaintiff's argument fails because Dr. Butler was under no obligation to defer to plaintiff's or plaintiff's previous doctor's treatment preferences.

The overwhelming evidence (which includes plaintiff's own statements) reveals that Dr. Butler tried to evaluate plaintiff on numerous occasions so she could exercise her own professional judgment regarding the proper treatment for plaintiff's complaints. Over and over again, when plaintiff did not immediately get what he wanted or when plaintiff's representations were proven to be false or misleading, plaintiff either refused further examination or refused the prescribed treatment.

It appears that in certain cases, such as with plaintiff's unverified fish allergy, Dr. Butler did not believe it was worth fighting with plaintiff, so she capitulated to his demands despite no documented medical reason to do so. However, in other cases, such as with plaintiff's demand for high doses of Ibuprofen or his preference for a wheelchair rather than exercising, Dr. Butler recognized a risk to plaintiff's long-term health, denied plaintiff's preferred treatment, and prescribed

8

a different course of treatment that she believed would address his complaints without harmful consequences. Dr. Butler's decision to defy plaintiff's wishes in order to protect his well-being is the opposite of deliberate indifference.

Plainly put, plaintiff is not a medical professional and his preference for one doctor's prescribed treatment over another's is not a sufficient basis for a constitutional claim. Because the evidence demonstrates consistent efforts by Dr. Butler to treat plaintiff despite his rude, reluctant, and difficult behavior, no reasonable jury could conclude that she was deliberately indifferent to his medical needs.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment as to Dr. Butler (ECF No. 107) is **DENIED.** Dr. Butler's motion for summary judgment (ECF No. 124) is **GRANTED**.

Dated this   1st   day of March, 2018.

> s/ William C. Griesbach
> William C. Griesbach, Chief Judge
> United States District Court