UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TRAVIS DELANEY WILLIAMS,

    Plaintiff,

v.                                            Case No. 14-C-1594

REBECCA SWENSON,
JULIE BENNETT, and
MEGHAN KEEFER, et al.,

    Defendants.

---

## DECISION AND ORDER

---

Plaintiff Travis Delaney Williams, who is currently representing himself, filed this action under 42 U.S.C. § 1983 alleging that his civil rights were violated while he was incarcerated at the Kenosha County Detention Center (KCDC) (also referred to by the parties as the Kenosha County Jail). On September 10, 2015, U.S. District Court Judge Pamela Pepper (the judge assigned to the case at that time) allowed plaintiff to proceed on an Eighth Amendment deliberate indifference claim against defendants Nurse Practitioner Rebecca Swenson, Nurse Julie Bennett, and Nurse Meghan Keefer (the Medical Defendants).[1] ECF No. 12. Currently before the court is plaintiff's motion for summary judgment, ECF No. 107, and the Medical Defendants' motion for summary judgment, ECF

---

[1] Plaintiff is limited to the claims that Judge Pepper allowed him to proceed on based on her review of the factual allegations in his complaint. Claims that plaintiff attempted to raise after Judge Pepper's screening order are not properly before the court, and the court will not consider them.

No. 116.[2] For the following reasons, the court will grant the Medical Defendants' motion for summary judgment and deny plaintiff's motion for summary judgment.

## BACKGROUND

Plaintiff's complaint relates to events that allegedly occurred between October 2014, when plaintiff arrived at KCDC, and December 2014, when plaintiff filed his federal lawsuit. ECF No. 158 ¶ 1. On October 31, 2014, plaintiff informed health services that he had a fish allergy, and he requested that he be given fish-free meal trays. *Id.* ¶ 44; ECF No. 145 ¶ 9. According to defendants, plaintiff refused to identify the doctor who diagnosed the allergy, refused to authorize staff to obtain relevant records establishing an allergy, and refused a blood test to verify the allergy. ECF No. 158 ¶ 44. Regardless, despite no medical support, plaintiff's diet was changed on November 7, 2014, so that he did not receive fish. *Id.* ¶ 45.

When plaintiff entered KCDC, he was receiving 800mg of Ibuprofen three times per day to address complaints of back, shoulder, hip, and knee pain. *See id.* ¶¶ 27, 42; ECF No. 145 ¶ 24. Although not entirely clear when, the KCDC doctor reduced the dosage and ordered that it be offered only twice per day. *See* ECF No. 158 ¶ 41. Plaintiff subsequently complained that he wanted the dosage to be increased to what he had received at his previous institution. *See id.* ¶ 42; ECF No. 145 ¶¶ 24, 27. On November 19, 2014, Swenson attempted to talk to plaintiff about his desire for the Ibuprofen dosage to be increased and his refusal to be examined. ECF No. 158 ¶ 41. Plaintiff asserts that he was in the shower while Swenson came to talk to him and that she threatened him in order to force him to sign a release of liability form that she had previously given him. *Id.* Plaintiff

---

[2] Defendant Karen Butler, as well as defendants David Beth, Mark Ulemen, and Kurt Mikutis (the Jail Defendants) also filed motions for summary judgment. ECF Nos. 124, 143. The court addresses those motions in separate orders.

asserts that he told Swenson that he "wipe[d] his butt with the [forms] Swenson had sent," so he could not sign them. *Id.* Swenson asserts that she told him he could receive Ibuprofen three times per day, but he needed to be examined first, but plaintiff refused to be examined and told Swenson to just change the order. *Id.*

Swenson explains that, despite plaintiff refusing to be examined, his Ibuprofen was increased to three times per day: 600mg in the morning, 400mg in the afternoon, and 600mg at night. *Id.* ¶ 42. Plaintiff was not satisfied with this new prescription because he wanted to receive 800mg three times a day as he had been prescribed before he entered KCDC. *Id.*; ECF No. 145 ¶ 27. Swenson informed plaintiff that he should take the Ibuprofen only when needed and warned him that Ibuprofen can cause stomach upset and increase blood pressure. ECF No. 158 ¶ 43. She told him to notify health services if he had any questions or wanted to be examined. *Id.*

On November 17, 2014, plaintiff was informed (it is not clear by whom) that he would need to be examined before he would be given a wheelchair. *Id.* ¶ 48. Although not entirely clear, it appears that a few days later, plaintiff was placed on a seventy-two hour activity log, during which time officers monitored and recorded plaintiff's activity without plaintiff's knowledge. *Id.* ¶ 49. During that time, plaintiff was observed moving around his cell, bending, walking, and standing without difficulty. *Id.* Shortly thereafter, health services obtained plaintiff's medical records from his previous institution. *Id.* ¶ 52. According to the Medical Defendants, the records did not support plaintiff's contention that he needed surgery to address his hip and knee pain. *Id.* Plaintiff explains that the doctor at his previous institution declined to consider surgery only because he found out plaintiff was scheduled to leave the institution. *Id.*

3

On November 27, 2014, plaintiff was examined (again, it is unclear who examined plaintiff); medical records indicate that there was no documented evidence of a knee replacement surgery, nor was there a scar behind plaintiff's knee. *Id.* ¶ 50. Plaintiff's request for a wheelchair was then denied. *Id.* ¶ 47. An order was entered for plaintiff to be seen by the doctor every week and for the KCDC nurse practitioner to see him twice per week, but plaintiff often refused to see them. *Id.* ¶ 51. Plaintiff explains that he had no reason to see them, until they threatened to stop his medication unless he agreed to be examined. *Id.*

Also on November 27, 2014, Keefer explained to plaintiff that the doctor was willing to refill his Ibuprofen prescription for only two more weeks. *Id.* ¶ 58. She told him that, if he wanted further refills, he needed to be examined by the doctor. *Id.* That same day, plaintiff requested minerin cream, which is used for dry skin, and lactulose, which is a laxative used by those who are lactose intolerant. *Id.* ¶ 60. The Medical Defendants assert that plaintiff was offered an alternative to lactulose, but he refused. *Id.* The next day, plaintiff was given lactulose for two weeks, and told he needed to be examined before the prescription would be extended further. *Id.* ¶ 61. Plaintiff indicates that his prescriptions for minerin cream and lactulose were discontinued on January 20, 2015. ECF No. 14 ¶¶ 34–35.

On December 6, 2014, the doctor changed plaintiff's Ibuprofen prescription to 800mg twice per day for seven more days. *Id.* ¶¶ 29–35; ECF No. 145 ¶ 28. The next day, Bennett informed plaintiff that he needed to see the doctor if he wanted to receive Ibuprofen after that seven-day period. ECF No. 158 ¶ 35. According to Bennett, plaintiff was not denied his prescribed medications; he refused to take all of his morning medications except for Omeprazole. *Id.* ¶ 36. Plaintiff argues that the doctor erred when she decided to reduce his Ibuprofen dosage from three

4

times per day to two times per day. He explains that he is not paralyzed, so his ability to move around his cell should not have been used as a basis for reducing his pain medication. *Id.* ¶¶ 29–31. He also argues that he had been told on November 27 that his prescription would be continued for two weeks, and so it was improper for the doctor to adjust the prescription before that two-week period had passed. *Id.*

Plaintiff agreed to be examined by the doctor on December 9, 2014. *Id.* ¶ 38. The doctor noted that plaintiff's musculoskeletal exam was normal. *Id.* She opted to change plaintiff's pain medication from Ibuprofen (which plaintiff asserts worked) to Gabapentin (which plaintiff asserts did not work). *Id.* ¶ 35.

Throughout December 2014, Swenson asserts that repeated attempts were made to evaluate or treat plaintiff, but he often refused to be seen. She asserts that, during that month, he was seen daily during medication pass. *Id.* ¶ 14. On at least five days, he refused to take his medications; on four other days he refused to see a nurse practitioner; and on one day he refused to see the doctor. *Id.* ¶ 55. Plaintiff does not dispute that he refused medications or evaluations, but he explains that he either did not need what was being offered or, because he did not want to get into a confrontation with medical staff, he would just walk away and ignore them. *See, e.g.*, *id.* ¶¶ 9, 12, 16, 20.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there

is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (citations omitted). This standard contains both an objective element—that the medical needs be sufficiently serious—and a subjective element—that the officials act with a sufficiently culpable state of mind. *Id.* To survive summary judgment plaintiff must set forth evidence such that a jury could reasonably conclude that he has proven both elements of the standard. Plaintiff asserts the Medical Defendants were deliberately indifferent to his medical needs because they denied him minerin cream and lactulose, failed to promptly order a no-fish food tray, and denied plaintiff pain medication and a wheelchair. The court will address each claim in turn.

**A. Minerin Cream and Lactulose**

The Medical Defendants are entitled to summary judgment on plaintiff's claim that they denied him minerin cream and lactulose. The undisputed evidence shows that, on November 27, 2014, plaintiff informed health services that he was *almost* out of minerin cream and that he needed a renewal of his prescription for lactulose. Plaintiff informed Keefer that he did not want an

6

alternative to lactulose, so, the next day, plaintiff's prescription for lactulose was renewed. ECF No. 158 ¶ 61. He was told that, if he wanted further refills, he needed to be examined within the next two weeks. *Id.* According to plaintiff, he continued to receive lactulose and minerin cream until January 20, 2015, when his prescriptions were discontinued. ECF No. 145 ¶ 35.

Plaintiff filed his federal complaint on December 23, 2014, nearly a month before he stopped receiving minerin cream and lactulose. ECF No. 1. In other words, the undisputed evidence demonstrates that, during the relevant time, plaintiff was without lactulose for—at most—one day and that he received minerin cream without interruption. A one-day delay in receiving a medication that treats constipation is insufficient to establish a constitutional violation. Because no reasonable jury could conclude on these facts that the Medical Defendants were deliberately indifferent to plaintiff's medical needs, the court will grant their motion for summary judgment on this claim.

**B. No-Fish Food Tray**

The Medical Defendants are also entitled to summary judgment on plaintiff's claim that they were deliberately indifferent to his fish allergy. Putting aside whether the Medical Defendants had the authority to order a special food tray for plaintiff, the undisputed evidence shows that only one week passed between plaintiff informing health services that he had a fish allergy and health services staff ordering that plaintiff receive a no-fish tray. ECF No. 145 ¶ 9; ECF No. 158 ¶ 45. The Medical Defendants assert that during this week, they tried, without success, to verify plaintiff's claim of an allergy.

Even assuming plaintiff is allergic to fish, he provided no evidence suggesting that he received fish after informing health services of his alleged allergy or, if he did receive fish, that he suffered any harm as a result. To prevail on a claim of deliberate indifference to a serious medical

7

need, a plaintiff must prove that: (1) he suffered from an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to it; and (3) the defendants' indifference caused the plaintiff some injury. *Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010). Because there is no evidence that plaintiff suffered an injury between the time he informed health services of his fish allergy and the time he received the food accommodation, he cannot prevail on this claim.

**C. Pain Medication and Wheelchair Denial**

The Medical Defendants also are entitled to summary judgment based on plaintiff's claim that they were deliberately indifferent to the pain he suffered as a result of osteoarthritis. It is well settled that neither a plaintiff's nor another medical professional's disagreement with a health official's treatment decisions, without more, will be sufficient to make out a constitutional claim. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996). Further, nurses may generally defer to instructions given by physicians. *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012). Of course, that "deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient." *Id.* (citations omitted).

Here, the doctor reduced the Ibuprofen dosage that plaintiff had been prescribed at his prior institution. Plaintiff demanded that the dosage be restored, but the doctor would not do so without first examining plaintiff. As she explained in her own motion for summary judgment, she was concerned about the potential long-term risk to plaintiff associated with the chronic use of Ibuprofen. ECF No. 132 at ¶¶ 37–38. Similarly, although plaintiff demanded that he be allowed to use a wheelchair, the doctor wanted to first verify plaintiff's claims about his medical history and examine

8

plaintiff, as she believed movement and exercise were the best treatment for plaintiff's joint pain. ECF No. 132 at ¶¶ 26, 58–59. Following a seventy-two hour observation of plaintiff's movements and a physical examination of plaintiff's knee, she determined that plaintiff did not need to use a wheelchair on a daily basis. *Id.* ¶ 28.

Plaintiff sets forth no evidence to suggest that the Medical Defendants' deference to the doctor's medication and wheelchair orders was "blind or unthinking" or that they had any reason to believe that the doctor's orders would likely harm plaintiff. Although the doctor reduced plaintiff's Ibuprofen dosage, she did not eliminate it. Further, she made clear that, if it was not working, the dosage could be increased again once he agreed to be examined. In communicating with plaintiff about the reduced dosage, Swenson informed him of the risks associated with prolonged Ibuprofen use. All three Medical Defendants told him he needed to be examined by the doctor so she could better assess his condition and treatment. With regard to plaintiff's request for a wheelchair, Swenson knew that the order was entered after a seventy-two-hour period during which plaintiff's movements were observed and after a physical examination of plaintiff's knee, which revealed no abnormalities or deformities. As such, she had no reason to question the doctor's assessment that plaintiff did not need a wheelchair.

Plaintiff acknowledges that he did not want to be examined by the doctor or the Medical Defendants; he only wanted them to treat him the same way that the doctor at his prior institution had treated him. *See, e.g.*, ECF No. 145 ¶¶ 24, 25, 27; ECF No. 158 ¶¶ 12, 20. As already explained, plaintiff's treatment preferences are not a legitimate basis for a constitutional claim. The doctor was entitled to exercise her own medical judgment based on her own evaluation of plaintiff's conditions. Plaintiff cannot manufacture a claim by refusing her the opportunity to do that. Accordingly, based

9

on the Medical Defendants' persistent efforts to convince plaintiff to submit to an evaluation and based on the doctor's facially legitimate reasons for adjusting plaintiff's treatment upon his admission to KCDC, the court finds that no reasonable jury could conclude that the Medical Defendants were deliberately indifferent to plaintiff's complaints of pain when they deferred to the doctor's orders regarding plaintiff's pain medication and wheelchair use. They are entitled to summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment as to the Medical Defendants (ECF No. 107) is **DENIED.** Swenson, Bennett, and Keefer's motion for summary judgment (ECF No. 116) is **GRANTED**. The court further **DISMISSES** this case. The clerk of court's office will enter judgment accordingly.

Dated this   1st   day of March, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

This order and the judgment to follow are final. The plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If the plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If the plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.